UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

TROY CAMERON et al.,

         Plaintiffs,         Case No. 1:10-cv-539

v.         Honorable Gordon J. Quist

CAROL HOWES et al.,

         Defendants.
_____/

**OPINION**

This is a civil rights action originally brought by five state prisoners under 42 U.S.C. § 1983. The claims of two of those Plaintiffs have now been dismissed without prejudice for lack of prosecution because they failed to comply with the Court's order regarding their motions to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiffs' complaint against Defendants Howes, Caruso, Scott, ADW Smith, Sampson, King, Atterberry, Beckwith, Schoenfeld, Correctional Medical Services, and

the Psychological Services Unit. The Court will serve the complaint against Defendants Dietician Smith, Oulette, Gelabert and Prison Health Services.

**Discussion**

I.   Factual allegations

This action initially was brought by Plaintiffs Troy Cameron, Dane Holmes, Harold Lee Wilson, II, Deandre Dewayne Wilson, and Adam Shepard, all of whom are incarcerated at the Florence Crane Correctional Facility (ACF). The Court has dismissed Plaintiffs Dane Holmes and Harold Lee Wilson, II, as neither complied with the Court's order regarding payment of the filing fee or initial partial filing fee as required to proceed *in forma pauperis*. The Court therefore will consider only that portion of the complaint involving Plaintiffs Troy Cameron, Deandre Dewayne Wilson, and Adam Shepard. Plaintiffs sue the following Defendants: ACF Warden Carol Howes; Michigan Department of Corrections (MDOC) Director Patricia Caruso; ACF Grievance Coordinator Anne Scott; ACF Assistant Deputy Wardens (ADWs) (unknown) Smith and (unknown) Beckwith; ACF Dietician (unknown) Smith; ACF Physician's Assistant (unknown) Oulette; Michigan Parole Board (MPB) members Barbara Sampson, (unknown) King, and (unknown) Atterberry; ACF Doctor Raymond Gelabert; ACF Classification Director (unknown) Schoenfeld; Prison Health Services, Inc.; Correctional Medical Services, Inc.; and the Psychological Services Unit.

Plaintiff Cameron alleges that he has been incarcerated with the MDOC since 2005 and housed at ACF since 2008. He claims that, at intake into the MDOC at the Reception and Guidance Center (RG&C), he was instructed to take Sexual Offenders Programming because of his underlying conviction. He alleges that he has been unable to enroll in that program and will be unable to complete the program prior to his July 2010 parole interview for a potential April 14, 2011

release date. He contends that, when a prisoner has not taken the required therapy program, the MPB typically will not grant parole and will issue a twelve-month continuance. Plaintiff alleges that, as a result of Defendants' failure to make the classes available, he will be incarcerated for a longer period of time.

Cameron also alleges that he has experienced multiple medical issues during his incarceration with the MDOC: having his teeth pulled instead of fixed; failure to provide him partial dentures, inadequate dental cleaning, an infection in his gums, and pain and injury to his back. He alleges that he was placed on a waiting list for dental services. In addition, he complains that he was given inadequate treatment for the osteoarthritis in his back. He acknowledges that he received a six-month medical detail for a bottom bunk and a one-month medical detail for a "can," as well as two days of pain medication. He contends that, despite ongoing pain, he was told that medical staff could not help him further because Defendant Prison Health Services would not authorize further treatment. Further, Plaintiff was diagnosed with bronchitis in July 2005, and he immediately was placed on an inhaler and antibiotics. He complains that an x-ray showed a lung abnormality, but no action was taken. Cameron did not receive a follow-up visit. Finally, he alleges that he was denied a medical diet by Defendant Dietician Smith, despite being told by Defendants Oulette and Gelabert that he needed to be placed on a special medical diet for his serious problems with high cholesterol.

In his last set of allegations, Plaintiff Cameron complains that the entrance to B-Unit at ACF has a posted sign stating that "asbestos containing materials may be present in the unit." (Compl., ¶ 42, Page ID #7.) Plaintiff also alleges that he comes into contact with black mold in the showering areas, stagnant and standing water in the bathrooms and showering area, as well as inadequate ventilation and lighting in the dorm areas. In addition, the cleaning supplies given to prisoners allegedly are diluted and inadequate to kill viruses such as AIDS, HIV, and Hepatitis C,

all of which infect some prisoners in the unit. Plaintiff Cameron asserts that Defendants Howes, Smith and Beckwith have ignored his complaints about the lack of ventilation in the housing units.

Plaintiff Deandre Wilson has been incarcerated at the MDOC since 1992, and he has been housed at ACF since June 2009. Plaintiff Wilson was told at RG&C that he needed to complete an Assaultive Offenders Therapy program because of his underlying conviction. He complains that the MPB has denied him parole and has issued twelve-month continuances on numerous past occasions because, in part, Plaintiff has not yet enrolled in Assaultive Offenders Therapy. Plaintiff Wilson alleges that he has been subjected to the same conditions in the housing unit experienced by Plaintiff Cameron.

Plaintiff Shepard alleges that he has been incarcerated with the MDOC since January 2007 and has resided at ACF since March 2010. Plaintiff Shepard was instructed by RG&C to take the Sexual Offenders Program because of his underlying conviction. Despite multiple requests, Plaintiff has not been placed in the Sexual Offenders Programming. Plaintiff has not yet met with the MPB, but he is scheduled for a meeting with them in June 2011, and he anticipates being denied parole because of his failure to complete the Sexual Offenders Program.

Shepard also alleges that he is an insulin-dependent diabetic and has been prescribed insulin for a number of years. Defendants Oulette and Gelabert allegedly removed Plaintiff from insulin despite his ongoing, intense diabetic issues. He allegedly has complained but has continued to be deprived of needed medication and treatment. Finally, Plaintiff Shepard claims that he has been subjected to the same housing conditions experienced by Defendants Cameron and Wilson.

Plaintiffs seek declaratory and injunctive relief, including new parole review hearings in which the MBP does not consider Plaintiffs' lack of participation in the required therapy programs. They also seek compensatory and punitive damages.

II. <u>Sovereign Immunity</u>

Plaintiffs sue the Psychological Services Unit. The Michigan Department of Corrections operates a Psychological Services Unit at each prison facility. *See* Mich. Dept. of Corr., Prisoner Mental Health Services, http://michigan.gov/corrections/0,1607,7-119-9741_9744---,00.html (last visited Aug. 31, 2010). The Psychological Services Unit therefore is part of the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit specifically has held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, No. 08-1541, 2010 WL 841198, at *7 (6th Cir. Mar. 12, 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Psychological Services Unit, as part of the Michigan Department of Corrections, is immune from injunctive and monetary relief. *See Fleming v. Martin*, 24 F. App'x 258, 259 (6th Cir. 2001) (Michigan Parole Board entitled to Eleventh Amendment immunity); *Carson v. Mich. Parole Bd.*, No. 88-1277, 1988 WL 79688, at *1 (6th Cir. July 27, 1988) (same).

### III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Sampson, King and Atterberry

Plaintiffs claim that MPB members Sampson, King and Atterberry have denied them parole and have continued their sentences because Plaintiffs failed to complete the required offender programming. Plaintiffs argue that they are entitled to offender programming because they have been ordered to participate in the programs as a condition for their release. In addition, Plaintiffs contend that the MPB members have violated their constitutional rights by considering Plaintiffs' failure to complete offender programming in denying parole, despite the fact that the failure to attend the programs is beyond Plaintiffs' control.

"Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Contrary to their assertions, Plaintiffs do not have a federally cognizable liberty interest in participating in the rehabilitative program at ACF. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d

527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Because Plaintiffs have no liberty interest in rehabilitative programs, their constitutional rights have not been denied by any Defendant's failure to enroll them in such programs.

Moreover, Plaintiffs fail to state a due process claim based on their allegations that Defendant MPB members Sampson, King and Atterberry violated Plaintiffs' due process rights by considering their failure to complete offender programming in denying them parole. To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiffs fail to raise a claim of constitutional magnitude because they have no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. *See Foster v.*

*Booker*, 595 F.3d 353, 368 (6th Cir. 2010); *Ward v. Stegall*, 93 F. App'x 805, 806 (6th Cir. 2004); *Martin v. Ohio Adult Parole Auth.*, 83 F. App'x 114, 155 (6th Cir. 2003); *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999).

Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). In addition, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiffs have served their maximum sentences, they have no reasonable expectation of liberty. In the absence of a liberty interest, even an allegation of arbitrary or capricious denial of release on parole states no federal claim. *See Haynes*, 1990 WL 41025, at *1. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Plaintiffs for parole, therefore, implicates no federal right. Moreover, because Plaintiffs have no liberty interest in being paroled, they cannot show that Defendants relied upon their failure

to complete an offender program to a constitutionally-significant degree. *See Caldwell v. McNutt*, No. 04-2335, 2006 WL 45275, at *1 (6th Cir. Jan. 10, 2006) ("[E]ven if the Parole Board relied on inaccurate information to deny Caldwell parole, it did not violate any liberty interest protected by the United States Constitution."); *Echlin v. Boland*, No. 03-2309, 2004 WL 2203550, at *2 (6th Cir. Sept. 17, 2004) (prisoner could not bring a § 1983 action to challenge the information considered by the parole board because he has no liberty interest in parole); *see also Draughn v. Green*, No. 97-1263, 1999 WL 164915, at *2 (6th Cir. Mar. 12, 1999) (in order for the Due Process Clause to be implicated, false information in a prisoner's file must be relied on to a constitutionally significant degree); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996) (no constitutional violation by having false information placed in a prison file); *Carson v. Little*, No. 88-1505, 1989 WL 40171, at *1 (6th Cir. Apr. 18, 1989) (inaccurate information in an inmate's file does not amount to a constitutional violation). In the absence of a liberty interest, Plaintiffs fail to state a claim for a violation of their procedural due process rights.

### B. Caruso, Scott, Schoenfeld, and Correctional Medical Services

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint against him is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or

responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"); *see also Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Because the allegations by Plaintiffs Cameron, Deandre Wilson and Shepard fail even to mention Defendants Caruso, Scott, Schoenfeld, and Correctional Medical Services in the body of their complaint, their complaint falls far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Their complaint therefore must be dismissed against Defendants Caruso, Scott, Schoenfeld, and Correctional Medical Services.

### C. Defendants Howes, ADW Smith and Beckwith

Plaintiffs contend that the conditions of their housing unit violate the Eighth Amendment. Plaintiffs make several allegations about their housing conditions. First, they complain that a sign informs them that "asbestos containing materials may be present in the housing unit." Second, they complain that the showering areas have black mold and the bathrooms have standing water. Third, they complain that there is inadequate ventilation and lighting in the unit. Fourth, they assert that the disinfectant/sanitizer/deodorant liquid given to them to clean the unit is diluted and, they imply, inadequate to prevent exposure to viruses in the feces and urine that are

regularly found in the prisoner bathroom. They allege that they complained without success to Defendants Howes, ADW Smith, and Beckwith about the ventilation conditions.[1]

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

---

[1] The Court notes that Plaintiffs do not allege that Defendants Howes, ADW Smith and Beckwith refused to deal with any of the other allegedly unconstitutional conditions in the unit. For this reason alone, Plaintiffs fail to state a claim against these Defendants on issues other than the ventilation problems.

Plaintiffs' allegations about the presence of asbestos in the unit do not rise to the level of an Eighth Amendment violation. A plaintiff may state a cause of action under the Eighth Amendment for involuntary exposure to asbestos which results in a present injury or an unreasonable risk of serious damage to his future health. *See Saaty v. Morris*, No. 95-3713, 1996 WL 160803, at *1 (6th Cir. Apr. 4, 1996). However, the existence of a posted warning that certain materials in the housing unit contain asbestos does not in any way suggest that prisoners are currently at risk of asbestos exposure. Plaintiffs do not allege that they were exposed to friable asbestos, and they do not allege that any asbestos-containing material is decaying so as to present a hazard to their future health. *See Smith v. United States*, 561 F.3d 1090 (10th Cir. 2009) (holding that a prisoner who alleges that prison employees knowingly ordered him to work in an unventilated closet while another inmate ripped out asbestos-containing pipe insulation was sufficient to state a claim). Similarly, they do not allege that they have experienced injury from a prior exposure. In the absence of such factual allegations, Plaintiffs' claims that they are being exposed to asbestos are unsupported. Plaintiffs therefore fail to allege a serious risk to inmate health or safety. *See Leonard v. Ohio Dep't of Rehab. & Corr.*, No. 2:09-CV-961, at *1 (S.D. Ohio Jul. 30, 2010) (holding that in order to establish an Eighth Amendment violation on the basis of an alleged exposure to asbestos, plaintiff must do more than allege that asbestos is present at the prison). In addition, Plaintiffs make no allegation that Defendants have been deliberately indifferent to that risk. Indeed, the fact that Defendants have posted warnings itself undermines Plaintiffs' claim of deliberate indifference. *See Saaty*, 1996 WL 160803, at *1 (holding that where the plaintiff acknowledges that the prison has responded to prisoner concerns about asbestos, he cannot demonstrate the requisite deliberate indifference).

In addition, the mere presence of some mold and standing water in the bathroom and shower areas does not create a condition "intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. Exposure to black mold may, in an appropriate case, be sufficiently serious as to satisfy the objective component of the Eighth Amendment. *Compare Board v. Farnham*, 394 F.3d 469, 486-87 (7th Cir. 2005) (mold in the ventilation system violates Eighth Amendment), *with Causey v. Allison*, No. 1:08CV155-RHW, 2008 WL 4191746, at *1 (S.D. Miss. Sept. 9, 2008) (no Eighth Amendment violation where prisoner claimed black mold was growing in the shower but "admits that he has had no medical problems resulting from the black mold"); *see also McIntyre v. Phillips*, No. 1:07-cv-527, 2007 WL 2986470, at *2-*4 (W.D. Mich. Sept. 10, 2007) (dismissing prisoner action and holding that some exposure to black mold is a risk society has chosen to tolerate) (citing *Brady v. State Farm Fire & Cas. Co.*, No. 05-30716, 2006 WL 551388, at *3 (5th Cir. Mar. 8, 2006) (dismissing action because plaintiff did not use due diligence in determining whether mold was airborne or simply present in her house)). Here, Plaintiffs do not suggest that the mold is airborne, and they do not allege that the presence of mold causes them health problems or that they are presently at any substantial risk to their health. *See Morales v. White*, No. 07-2018, 2008 WL 4584340, at *14 (W.D. Tenn. 2008) (holding that allegations of black mold is located at some place within a housing unit is insufficient to support an Eighth Amendment claim). As a consequence, Plaintiffs' allegations about the presence of mold in the showers do not demonstrate the existence of a sufficiently serious risk to prisoner health. *Ivey*, 832 F.2d at 954.

Plaintiffs' allegations about inadequate ventilation also are insufficient to state a claim. In extreme circumstances, courts have found that inadequate ventilation may result in a sufficiently serious risk to prisoner safety under the Eighth Amendment. *See, e.g., White v. Monohan*, 326 F. App'x 385 (7th Cir. 2009) (reversing district court dismissal of claim alleging that

inadequate ventilation permitted temperatures to reach 110 degrees during the summer months); *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) (finding that the Eighth Amendment was violated by a ventilation system that allowed summer temperatures to average in the 90s, unless prison officials took measures to ameliorate the heat by providing fans, ice water and daily showers); *Keenan v. Hall*, 83 F.3d 1083 (9th Cir. 1996) (allowing a prisoner's claim that his cell was "[s]aturated with the [f]umes of [f]eces (thrown by some inmates), the smell of urine and vomit as well as other stale body odors"). However, absent such extreme conditions raising serious risks to prisoner health, the courts routinely have determined that claims concerning ventilation were insufficient to state an Eighth Amendment claim. *See, e.g., Vasquez v. Frank*, 290 F. App'x 927 (7th Cir. 2008) (holding that ventilation that allegedly caused dizziness, migraines, nasal congestion, nose bleeds and difficulty breathing did not rise to the level of an Eighth Amendment violation); *Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004) (citing cases and concluding that a ventilation system that allowed summer temperatures to average eighty-five or eighty-six degrees during the day and eighty degrees at night was not sufficiently extreme to violate the Eighth Amendment, where such temperatures were expected and tolerated by the general public in Florida); *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (upholding the dismissal of a prisoner's claim that the confiscation of his extension cord, which was needed to operate a fan, deprived him of constitutionally adequate ventilation); *Bourrage v. McFarland*, No. 99-60923, 2001 WL 185034 (5th Cir. Feb. 6, 2001) (upholding dismissal of a prisoner's claim that inadequate ventilation had led to his prescription for an Albuterol Inhaler); *Jasman v. Schmidt*, 4 F. App'x 233, 235-36 (6th Cir. 2001) (affirming dismissal of a claim that the weatherstripping on the doors of the cells at a Michigan prison prevented air circulation and resulted in inadequate ventilation); *Davis v. Crowley*, No. 00-1475, 2000 WL 1871891 (6th Cir. Dec. 12, 2000) (concluding that a plaintiff's allegations that a

ventilation system smelled strongly of gas did not allege a sufficiently serious harm where, despite his allegations that the fumes caused him to experience shortness of breath and watery eyes, the plaintiff failed to allege a substantial risk of serious harm); *Thompson v. County of Medina*, 29 F.3d 238 (6th Cir. 1994) (upholding a dismissal of pretrial detainees' claim that a jail had inadequate ventilation); *King v. Berghuis*, No.1:10-cv-57, 2010 WL 565373, at *3 (W.D. Mich. Feb. 13, 2010) (dismissing prisoners' claim alleging that ventilation system moves less than 10 cubic feet of air and caused headaches).

In the instant case, Plaintiffs fail entirely to allege that Defendants have subjected them to an objectively serious deprivation. As the Supreme Court has observed, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9. Plaintiffs' allegations about inadequate ventilation are wholly conclusory. They make no factual allegation about the amount of ventilation in the unit, and they allege no health condition caused or aggravated by the conditions. *See Jasman v. Schmidt*, 4 F. App'x 233, 236 (6th Cir. 2001) (rejecting prisoner complaint about poor ventilation where plaintiff failed to allege harm caused by the ventilation). As a result, their allegations about inadequate ventilation create no inference of a serious risk to inmate health or safety.

Plaintiffs also allege that their housing unit has constitutionally inadequate lighting. At least one court has held that "[a]dequate lighting is one of the fundamental attributes of adequate shelter required by the Eighth Amendment." *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998). However, where, as here, Plaintiffs allege no more than that the lighting is inadequate, they fail to allege a sufficiently serious deprivation. *See Hall v. Jarrigan*, No. 2:07-CV-127, 2008 WL 5377893, at **5-6 (E.D. Tenn. Dec. 18, 2008) (rejecting "bald allegation of poor lighting" as sufficient to support an Eighth Amendment claim).

In sum, Plaintiffs fail to state an Eighth Amendment claim based on the condition of their housing unit. Because Plaintiffs make no other allegations against Defendants Howes, ADW Smith, and Beckwith, those Defendants are entitled to dismissal.

Plaintiffs' remaining claims are sufficient to warrant service of the complaint.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Howes, Caruso, Scott, ADW Smith, Sampson, King, Atterberry, Beckwith, Schoenfeld, Correctional Medical Services, and the Psychological Services Unit will be dismissed for failure to state a claim or because they are immune, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Dietician Smith, Oulette, Gelabert and Prison Health Services.

An Order consistent with this Opinion will be entered.


Dated: September 28, 2010                                      /s/ Gordon J. Quist
                                                          GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE