UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TROY CAMERON, *et al.*,

        Plaintiffs,

Case No. 1:10-cv-539

Hon. Gordon J. Quist

v.

CAROL HOWES, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by three state prisoners pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Prison Health Services, Inc. (sometimes "PHS"), Dr. Raymond Gelabert, and PA Margaret Ouellette (docket no. 65). Defendants' motion is unopposed.

    **I.**    **Background**

        This action was initiated by five prisoner plaintiffs. The court summarized plaintiffs' claims as follows:

> This action initially was brought by Plaintiffs Troy Cameron, Dane Holmes, Harold Lee Wilson, II, Deandre Dewayne Wilson, and Adam Shepard, all of whom are incarcerated at the Florence Crane Correctional Facility (ACF). The Court has dismissed Plaintiffs Dane Holmes and Harold Lee Wilson, II, as neither complied with the Court's order regarding payment of the filing fee or initial partial filing fee as required to proceed *in forma pauperis*. The Court therefore will consider only that portion of the complaint involving Plaintiffs Troy Cameron, Deandre Dewayne Wilson, and Adam Shepard. Plaintiffs sue the following Defendants: ACF Warden Carol Howes; Michigan Department of Corrections (MDOC) Director Patricia Caruso; ACF Grievance Coordinator Anne Scott; ACF Assistant Deputy Wardens (ADWs) (unknown) Smith and (unknown) Beckwith; ACF Dietician (unknown) Smith; ACF Physician's Assistant (unknown) Oulette; Michigan Parole Board (MPB) members Barbara Sampson, (unknown) King, and (unknown) Atterberry; ACF Doctor Raymond Gelabert; ACF Classification Director (unknown)

Schoenfeld; Prison Health Services, Inc.; Correctional Medical Services, Inc.; and the Psychological Services Unit.

Plaintiff Cameron alleges that he has been incarcerated with the MDOC since 2005 and housed at ACF since 2008. He claims that, at intake into the MDOC at the Reception and Guidance Center (RG&C), he was instructed to take Sexual Offenders Programming because of his underlying conviction. He alleges that he has been unable to enroll in that program and will be unable to complete the program prior to his July 2010 parole interview for a potential April 14, 2011 release date. He contends that, when a prisoner has not taken the required therapy program, the MPB typically will not grant parole and will issue a twelve-month continuance. Plaintiff alleges that, as a result of Defendants' failure to make the classes available, he will be incarcerated for a longer period of time.

Cameron also alleges that he has experienced multiple medical issues during his incarceration with the MDOC: having his teeth pulled instead of fixed; failure to provide him partial dentures, inadequate dental cleaning, an infection in his gums, and pain and injury to his back. He alleges that he was placed on a waiting list for dental services. In addition, he complains that he was given inadequate treatment for the osteoarthritis in his back. He acknowledges that he received a six-month medical detail for a bottom bunk and a one-month medical detail for a "can," as well as two days of pain medication. He contends that, despite ongoing pain, he was told that medical staff could not help him further because Defendant Prison Health Services would not authorize further treatment. Further, Plaintiff was diagnosed with bronchitis in July 2005, and he immediately was placed on an inhaler and antibiotics. He complains that an x-ray showed a lung abnormality, but no action was taken. Cameron did not receive a follow-up visit. Finally, he alleges that he was denied a medical diet by Defendant Dietician Smith, despite being told by Defendants Oulette and Gelabert that he needed to be placed on a special medical diet for his serious problems with high cholesterol.

In his last set of allegations, Plaintiff Cameron complains that the entrance to B-Unit at ACF has a posted sign stating that "asbestos containing materials may be present in the unit." (Compl., ¶ 42, Page ID #7.) Plaintiff also alleges that he comes into contact with black mold in the showering areas, stagnant and standing water in the bathrooms and showering area, as well as inadequate ventilation and lighting in the dorm areas. In addition, the cleaning supplies given to prisoners allegedly are diluted and inadequate to kill viruses such as AIDS, HIV, and Hepatitis C, all of which infect some prisoners in the unit. Plaintiff Cameron asserts that Defendants Howes, Smith and Beckwith have ignored his complaints about the lack of ventilation in the housing units.

Plaintiff Deandre Wilson has been incarcerated at the MDOC since 1992, and he has been housed at ACF since June 2009. Plaintiff Wilson was told at RG&C that

>he needed to complete an Assaultive Offenders Therapy program because of his underlying conviction. He complains that the MPB has denied him parole and has issued twelve-month continuances on numerous past occasions because, in part, Plaintiff has not yet enrolled in Assaultive Offenders Therapy. Plaintiff Wilson alleges that he has been subjected to the same conditions in the housing unit experienced by Plaintiff Cameron.
>
>Plaintiff Shepard alleges that he has been incarcerated with the MDOC since January 2007 and has resided at ACF since March 2010. Plaintiff Shepard was instructed by RG&C to take the Sexual Offenders Program because of his underlying conviction. Despite multiple requests, Plaintiff has not been placed in the Sexual Offenders Programming. Plaintiff has not yet met with the MPB, but he is scheduled for a meeting with them in June 2011, and he anticipates being denied parole because of his failure to complete the Sexual Offenders Program.
>
>Shepard also alleges that he is an insulin-dependent diabetic and has been prescribed insulin for a number of years. Defendants Oulette and Gelabert allegedly removed Plaintiff from insulin despite his ongoing, intense diabetic issues. He allegedly has complained but has continued to be deprived of needed medication and treatment. Finally, Plaintiff Shepard claims that he has been subjected to the same housing conditions experienced by Defendants Cameron and Wilson.
>
>Plaintiffs seek declaratory and injunctive relief, including new parole review hearings in which the MBP does not consider Plaintiffs' lack of participation in the required therapy programs. They also seek compensatory and punitive damages.

Opinion at pp. 2-4 (docket no. 35).

Upon initial screening, the court dismissed all claims except for the Eighth Amendment claims directed at defendants Unknown Dietician "Jane" Smith, PA Ouelette, Dr. Gelabert and Prisoner Health Services. *Id.* at p. 17; Order for Partial Service (docket no. 36). On April 26, 2011, the court dismissed plaintiffs' claims against Unknown Dietician "Jane" Smith. *See* Order of Dismissal (docket no. 55). The motion before the court seeks summary judgment on behalf of the three remaining defendants, PHS, Dr. Gelabert and PA Ouellette.

## II. Motion for summary judgment

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Here, defendants' motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted

automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996).  However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact.  *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

>  **B.   Failure to Exhaust**

>  **1.   Exhaustion requirement**

The PLRA, 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.

### 2. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grieveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Claims by plaintiff Deandre Dewayne Wilson

In support of their motion as to plaintiff Deandre Wilson, defendants have submitted the affidavit of Richard Russell, Manager of the Grievance Section of the MDOC. *See* Richard Russell Aff. (docket no. 66-2 at pp. 2-5). After reviewing the MDOC grievance records, Mr. Russell has submitted an MDOC Prisoner Step III grievance report which reflects that plaintiff Deandre Wilson had one Step III grievance while at ACF, Grievance ACF-10-04-0495-28i ("495"). *See id.*;

MDOC Prisoner Step III grievance report (docket no. 66-2 at pp. 15-16); Grievance 495 (docket no. 66-2 at pp. 17-20). Grievance 495 contains an incident date of April 16, 2010, and complains that he was being denied therapy in the Assaultive Offenders Program. *See* Grievance 495. The grievance was rejected at Step I because Wilson made no attempt to resolve the grievance with appropriate staff. *Id.* However, the MDOC later addressed the merits of his claim and denied the Step III appeal on July 16, 2010. *Id.* Under these circumstances, where the MDOC overlooked plaintiff's procedural shortcomings and reviewed the merits of the grievance, the Sixth Circuit has held that the court should consider the grievance properly exhausted for purposes of the PLRA. "When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).[1]

Nevertheless, defendants are entitled to summary judgment because plaintiff also filed this federal civil rights action before he completed his exhaustion of Grievance 495. While it appears that plaintiff Deandre Wilson filed a Step III appeal, he failed to exhaust the grievance prior to filing this action on June 7, 2010. A prisoner may not exhaust administrative remedies

---

[1] The Sixth Circuit provided the following rationale:

> In that setting, the State, as the promulgator of the rules, has had a chance to provide a remedy for the inmate and to decide whether the objectives of the review process have been served. When the State nonetheless decides to reject the claim on the merits, who are we to second guess its decision to overlook or forgive its own procedural bar? The rules serve the *State's* interests: its interest in creating a prison grievance system, its interest in reviewing a complaint before another sovereign gets involved and its interest in deciding when to waive or enforce its own rules. And the State's decision to review a claim on the merits gives us a warrant to do so as well, even when a procedural default might otherwise have resolved the claim.

*Reed-Bey*, 603 F.3d at 325 (emphasis in original).

during the pendency of the federal civil rights action based upon that grievance. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999). As the Sixth Circuit observed in *Freeman*,

> While we recognize that plaintiff made some attempts to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed. The plain language of the statute makes exhaustion a precondition to filing an action in federal court ("No action shall be brought . . . until such administrative remedies as are available are exhausted."). The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.

*Id.* (citations omitted). The Sixth Circuit's decision in *Freeman* is consistent with the Supreme Court's requirement that § 1997e(a) requires proper exhaustion. "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford*, 548 U.S. at 93, quoting *Nussle*, 534 U.S. at 525. Requiring proper exhaustion "reduces the quantity of prisoner suits because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court" and "improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court." *Woodford*, 548 U.S. at 94-95. While the MDOC may have waived its own procedural requirements when it addressed the merits of Wilson's grievance, *see* discussion, *supra*, the purposes underlying the two aspects of the exhaustion requirement are not completely co-extensive. In this instance, exhaustion serves to enhance the purposes of the federal courts as well as the prison system, and it is not the MDOC's to waive. The collective purposes of the exhaustion procedure are best served if that procedure, once initiated, is at least given the opportunity to run its course. To permit the MDOC to, in effect, excuse the prisoner's interruption of the grievance process once

begun is tantamount to the MDOC waiving its own obligations thereunder and signaling the prison population that the grievance procedure is a nullity. It tells prisoners that they can short-circuit the grievance process at any time by filing a federal lawsuit. This not only defeats the benefit of the exhaustion requirement to the courts, but has the potential to thwart the benefits of the exhaustion requirement to the prisoner's detriment (e.g., a more complete administrative record; an opportunity for a supervisor at higher level to review the matter and possibly correct it, etc.). The MDOC's waiver of its internal administrative exhaustion requirements did not relieve Wilson of the statutory requirement to properly exhaust his grievance as a precondition to filing a federal civil rights action based upon that grievance. *See Freeman, supra.*

In summary, there is no evidence that plaintiff Wilson properly exhausted any grievances against defendants PHS, Dr. Gelabert or PA Ouellette prior to filing this federal civil rights action. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91, 94-95. Accordingly, defendants are entitled to summary judgment as to defendant Wilson.

The complaint is also subject to dismissal on a separate basis. Plaintiff Wilson's claims should be dismissed for lack of prosecution. Wilson was paroled on September 13, 2011. *See* MDOC's Offender Tracking Service (OTIS) available at www.michigan.gov/corrections. However, Wilson has failed to advise the court of his current address. *See* Returned Mail (January 23, 2012) (docket no. 70). The local court rules provide that "[a] judicial office may issue an order to show cause why a case should not be dismissed for lack of prosecution or for failure to comply with these rules" and that if good cause is not shown, "a district judge may enter an order of dismissal with or without prejudice, without or without costs." W.D. Mich. LCivR 41.1. The local court rules further provide that "[f]ailure of a plaintiff to keep the Court apprised of a current address

9

shall be grounds for dismissal for want of prosecution." *Id.* Because plaintiff has failed to advise the court of his current address, and the court has no means to contact him, issuance of a show cause would be a useless act. Accordingly, in the alternative, I recommend dismissal of this plaintiff for want of prosecution.

### 4.     **Claims by plaintiff Adam Shepard**

In support of their motion for summary judgment as to plaintiff Shepard, defendants have submitted the affidavit of Richard Russell, Manager of the Grievance Section of the MDOC. *See* Richard Russell Aff. (docket no. 66-1 at pp. 2-5). Shepard alleged that he has resided at ACF since March 2010, but that despite multiple requests, he has not been placed in the Sexual Offenders Programming at the prison. After searching the MDOC grievance records, Mr. Russell determined that no Step III grievances were received from plaintiff Shepard for the operative time period, i.e., from March 1, 2010 until the filing of the complaint on June 7, 2010. Russell Aff. at ¶ 12. There is no evidence that plaintiff Shepard exhausted a grievance regarding this issue prior to filing this action. *See Freeman*, 196 F.3d at 645. Based on this record, there is no evidence that plaintiff Shepard properly exhausted any grievances against defendants PHS, Dr. Gelabert or PA Ouellette. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendants are entitled to summary judgment as to plaintiff Shepard.

### 5.     **Claims by plaintiff Troy Cameron**

Plaintiff Cameron has filed numerous grievances. *See* Russell Aff.; MDOC Step III Grievance Report (attached to Russell Aff.) (docket no. 65-4 at pp. 15-21). Since the summer of 2009, the MDOC has denied or rejected 46 grievances filed by plaintiff. *Id.* Defendants have identified 13 grievances which could arguably be related to the issues raised in this lawsuit.

However, plaintiff Cameron did not properly exhaust any of those grievances, which are summarized below:

ACF 2009-05-0441-28c ("441") contained an incident date of May 20, 2009 and complained that Dr. Gelabert was not responding to kites and other issues. *See* Grievance 441 (docket no. 65-4 at pp. 39-42). The grievance was rejected at Step I because it contained multiple issues. *Id.* The Step III appeal was denied as untimely. *Id.*

ACF 2009-08-0679-12i ("679") contained an incident date of July 25, 2009, and complained that PA Ouellette rejected an accommodation of a double mattress for plaintiff's arthritis in the spine. *See* Grievance 679 (docket no. 65-5 at pp. 50-54). This grievance was rejected at Step III as untimely. *Id.*

ACF 2009-08-0680-12i ("680") contained an incident date of July 25, 2009, and complained that plaintiff Cameron was denied a heat related illness detail or accommodation. *See* Grievance 680 (docket no. 65-5 at pp. 35-39). This grievance was rejected at Step III as untimely. *Id.*

ACF 2009-08-0681-12f ("681") contained an incident date of July 25, 2009, and complained that PA Ouellette "withheld necessary breathing treatments" and an inhaler. *See* Grievance 683 (docket no. 65-5 at pp. 30-34). This grievance was rejected as untimely at Step III. *Id.*

ACF 2009-08-0682-12h ("682") contained an incident date of July 25, 2009, and complained that plaintiff Cameron was denied a special diet due to his high blood pressure and cholesterol. *See* Grievance 682 (docket no. 65-5 at pp. 40-44). This grievance was rejected at Step III as untimely. *Id.*

ACF 2009-08-0683-12d ("683") contained an incident date of July 25, 2009, and complained that plaintiff Cameron was harassed and intimidated by PA Ouellette. *See* Grievance 683 (docket no. 65-5 at pp. 17-21). This grievance was rejected as untimely at Step III. *Id.*

ACF 2009-08-0684-12i ("684") contained an incident date of July 25, 2009, and complained that PA Ouellette and PHS denied him "much needed Tennis shoes . . . for a well known and documented back problem." *See* Grievance 684 (docket no. 65-5 at pp. 45-49). This grievance was rejected at Step III as untimely. *Id.*

ACF 2009-09-861-28e ("861") contained an incident date of August 27, 2009, and complained that PA Ouellette was giving plaintiff an inappropriate dosage of a medication (i.e., "too much inderal"). *See* Grievance 861 (docket no. 65-4 at pp. 35-38). The grievance was rejected as untimely at Steps I and III. *Id.*

ACF 2009-09-0862-28e ("862") contained an incident date of August 27, 2009 and complained that PA Ouellette and an unidentified woman from PHS conspired to deprive plaintiff Cameron of needed medication (i.e., an inhaler) without a hearing or due process. *See* Grievance 862 (docket no. 65-4 at pp. 31-34). The grievance was rejected as untimely at Steps I and III. *Id.*

ACF 2009-11-1086-28b ("1086") contained an incident date of November 9, 2009 and complained that plaintiff Cameron was denied an x-ray and treatment for a back injury. *See* Grievance 1086 (docket no. 65-4 at pp. 26-30). The grievance was rejected at Step I as being too vague. *Id.* at p. 29. The rejection was affirmed at Step II and then rejected at Step III as untimely. *Id.* at pp. 26-30.

ACF 2009-11-1116-12i ("1116") contained an incident date of November 18, 2009, and complained that PHS denied plaintiff Cameron additional pain medication, a double mattress

and shoes for his back condition (caused by a recent injury on or about November 13, 2009). *See* Grievance 1116 (docket no. 65-5 at pp. 8-11). The grievance was rejected as untimely at Steps II and III. *Id.*

ACF 2009-11-1115-12f3 ("1115") contained an incident date of November 19, 2009, and complained that plaintiff Cameron was denied blood pressure medication. *See* Grievance 1115 (docket no. 65-5 at pp. 12-16). This grievance was rejected as untimely at Step III. *Id.*

ACF 2009-11-1141-28f ("1141") contained an incident date of November 23, 2009 and complained that PHS and PA Ouellette were performing below the civilized standards of care. *See* Grievance 1141 (docket no. 65-4 at pp. 22-25). This grievance was rejected at Step I because plaintiff was on modified access status and did not request authorization to file a grievance. *Id.* at p. 25. The rejection was affirmed at Steps II and III. *Id.* at pp. 22-24.

Based on this record, there is no evidence that plaintiff Cameron properly exhausted any grievances against defendants PHS, Dr. Gelabert or PA Ouellette. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Defendants are entitled to summary judgment as to this defendant.

**IV.    Recommendation**

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 65) be **GRANTED** as to all plaintiffs, and that this action be **DISMISSED**.


Dated:  August 6, 2012                              /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge

13

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).